### A97A1284. RIVERS v. THE STATE.
(493 SE2d 2)

BEASLEY, Judge.

Sixteen-year-old Jimmy Lee Rivers was tried and convicted of aggravated assault (OCGA § 16-5-21) and entering an automobile with intent to commit a theft or felony (OCGA § 16-8-18). A juvenile petition alleging delinquency was filed, but he petitioned the juvenile court "to transfer to superior court and demand[ed] trial by jury." The court granted his request pursuant to OCGA § 15-11-39.

1. Rivers enumerates as error the juvenile court's order of transfer, contending that the court should not have allowed him to waive a

hearing in conformity with OCGA § 15-11-39.

The juvenile court transfer order has not been filed with this Court. Although the State attached a purported copy to its brief, we consider only the official record. *Burks v. First Union Mtg. Corp.*, 209 Ga. App. 41, 42 (432 SE2d 822) (1993). "[A] brief or an attachment thereto cannot be used as a procedural vehicle for adding evidence to the record. We must take our evidence from the record and not from the brief of either party." (Citations and punctuation omitted.) *Cotton States Mut. Ins. Co. v. Bogan*, 194 Ga. App. 824, 826 (392 SE2d 33) (1990); *Hooten v. State*, 212 Ga. App. 770, 775 (442 SE2d 836) (1994); *Leatherwood v. State*, 212 Ga. App. 342 (1) (a) (441 SE2d 813) (1994). Likewise, the purported evidence attached to Rivers' brief is not considered as it is not a part of the record on appeal.

We do have the juvenile court transcript of the hearing on the motion for transfer and bond. The superior court record does show that the case was transferred from juvenile court and that after transfer and indictment, Rivers waived formal arraignment and entered a plea of not guilty, participated in a two-day trial, and filed a timely motion for new trial, all without objection to the transfer. The first mention of it is in a second motion for new trial filed more than 11 months after judgment. Rivers contends the juvenile court erred by transferring because the case was not amenable to transfer per the guidelines.

Failure to timely object to a transfer to superior court waives appellate review of this issue. *Thompson v. State*, 258 Ga. 816, 817 (1) (375 SE2d 219) (1989). Compare *In the Interest of D. B.*, 187 Ga. App. 3 (2) (369 SE2d 498) (1988) (juvenile has no absolute right to transfer). An order transferring a case from juvenile to superior court pursuant to OCGA § 15-11-39 is a final order and directly appealable. *J. T. M. v. State of Ga.*, 142 Ga. App. 635, 636 (1) (236 SE2d 764) (1977). Rivers did not file a notice of appeal within 30 days of that decision. OCGA § 5-6-38.

Moreover, the juvenile court record shows that Rivers, represented by counsel and with his mother present, sought the transfer, primarily to get a jury trial, after discussing the matter with his counsel and parents. The State did not object.

2. In his second and third enumerations, Rivers raises as error the denial of his motions for new trial. Rivers' "Motion for Judgment or Acquittal Notwithstanding the Verdict, or in the Alternative A New Trial," is treated as a motion for new trial because a judgment notwithstanding a verdict does not lie in a criminal case. *State v. Bilal*, 192 Ga. App. 185, 186 (384 SE2d 253) (1989); *Rhyne v. State*, 209 Ga. App. 548, 550 (1) (434 SE2d 76) (1993).

Rivers argues the motions should have been granted because "there was reasonable doubt as to Defendant's guilt, the verdict from

the jury is contrary to the weight of the evidence, and at the very least the evidence was sufficiently close to warrant a retrial." In essence he contends the evidence was insufficient under *Jackson v. Virginia*, 443 U. S. 307, 319 (99 SC 2781, 61 LE2d 560) (1979): "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." The evidence is viewed with all reasonable inferences made, and all issues of weight and credibility resolved, in favor of the verdict. Id.; *Patterson v. State*, 181 Ga. App. 68, 69 (2) (351 SE2d 503) (1986). Conviction eliminates presumption of innocence, and weight of the evidence and witness credibility are exclusively jury issues. *Grant v. State*, 195 Ga. App. 463, 464 (1) (393 SE2d 737) (1990).

The record supports the verdict and judgment. Rivers contends the evidence was insufficient to show he committed aggravated assault because it tends to show his 13-year-old cousin was the one who pointed a loaded gun at the victim, and because he abandoned the enterprise before the assault.

Early on May 23, 1995, Rivers and Frankie Brown, while at the home of Rivers' father, planned and prepared to rob someone. Brown cut holes in one of Rivers' pillowcases to use as a mask and gathered some of Rivers' father's clothes to use as a disguise; Rivers helped. They took a .38 caliber semi-automatic pistol belonging to Rivers' father, which Rivers helped locate.

The two then walked around Madison until about 7:25 a.m., when one of them, wearing the disguise and a mask, approached the victim's car at an ATM. He tapped on the passenger window with the gun and pointed the loaded gun at the victim. The victim sped away and later described the clothes that matched the disguise, which included a green and white striped shirt. The victim stated the perpetrator's height as 5'8" to 5'10". It is undisputed that Rivers is approximately 5'8" tall and Brown was approximately 5'1" tall. A police officer who knew both boys saw the two at about 5:00 a.m. and Rivers was wearing a white and dark-colored striped shirt. The two boys were seen about 8:00 a.m. that morning breaking into a car and were arrested.

Brown and Rivers testified that Brown was the one who wore the disguise and assaulted the victim. OCGA § 16-2-20 provides that every person who intentionally aids or abets in the commission of a crime is a party thereto and may be charged with and convicted of the crime. "Conspiracy may be established by inference, as a deduction from acts and conduct establishing a common design to act together for the accomplishment of an unlawful purpose. [Cits.] Once that common design is shown by evidence tending to indicate that the individuals have associated themselves together to do an unlaw-

ful act, any act done in pursuance of that association by any one of the associates, would, in legal contemplation, be the act of each of them. [Cit.]" *Greene v. State*, 155 Ga. App. 222, 224-225 (270 SE2d 386) (1980); *Harper v. State*, 152 Ga. App. 689, 692 (3) (263 SE2d 547) (1979); *Ford v. State*, 163 Ga. App. 745, 746-747 (296 SE2d 85) (1982). In *Ford*, only one of three men pointed a gun at a police officer. The men who did not point the gun were equally guilty of aggravated assault where the evidence showed they acted in concert with the man who did. Id. at 746.

Rivers claims he abandoned the plan to rob someone by walking away just before Brown assaulted the victim, but Brown testified he told Rivers to cross the street to watch for cars, and Rivers admits he did so. Further, he admitted to the jury that he was a willing participant in the plan to rob someone at the ATM and participated in the preparation. The jury decides the factual issues. As for the car break-in, there is sufficient evidence that Rivers assisted with the crime.

Review of the transcript in a light most favorable to the jury's verdict reveals ample evidence from which any rational trier of fact could have found beyond a reasonable doubt that appellant was guilty of aggravated assault and entering an automobile with intent to commit theft.

*Judgment affirmed. McMurray, P. J., and Smith, J., concur.*

DECIDED OCTOBER 7, 1997 —
RECONSIDERATION DENIED OCTOBER 23, 1997.

*Mario S. Ninfo*, for appellant.
*Fredric D. Bright, District Attorney, Paul L. Groth, Assistant District Attorney*, for appellee.